**In the Matter of Allen R. OCHOCKI, Appellant,**

v.

**DAKOTA COUNTY SHERIFF'S DEPARTMENT, Respondent.**

No. C4–89–2104.

Supreme Court of Minnesota.

Jan. 11, 1991.

Hubert H. Humphrey, III, Atty. Gen., William J. Bregg, Comm. of Veteran's Affairs, St. Paul, Charles F. Gegen, Lakeville, for appellant.

James C. Backstrom, Dakota County Atty., Jay R. Stassen, Asst. Dakota County Atty., Hastings, for respondent.

WAHL, Justice.

Allen R. Ochocki appeals from a decision of the court of appeals reversing an order of the Commissioner of Veterans Affairs and holding that Dakota County did not violate the Veterans Preference Act when it revoked appellant's appointment to the position of Correctional Team Leader because he never validly held the position due to flaws in the hiring process. We affirm.

Respondent Dakota County announced, in May of 1988, that it would receive applications for five newly created positions as Correctional Team Leader at the county jail. This position was one of the first filled under Dakota County's new statutorily-authorized, merit-based Personnel Administration System. Minn.Stat. §§ 383D.21—383D.35 (1990). Appellant Ochocki, an honorably discharged veteran and a correctional officer with the Dakota County Sheriff's Department, was one of the five successful applicants. Several unsuccessful applicants filed an appeal with the county's Personnel Board of Appeals (PBA), claiming the selection process was flawed. According to the county's personnel manual the applicants, in addition to the normal procedure of testing and rating, were to have been examined by a three-member Oral Board consisting of one member from the Dakota County Sheriff's Department, one member from the Dakota County Employee Relations Department, and one member from an outside law enforcement agency. In this case, however, the sole rating of applicants was done by a four-member Oral Board, with two members from the Dakota County Sheriff's Department. The PBA conducted a hearing and reached three conclusions: one, that the county's original announcement for the position was flawed; two, that Dakota County Employment Relations Department violated procedure by relying solely on the Oral Board for rating the applicants; and

three, that use of a four-member Oral Board was improper. The PBA recommended that the promotions be set aside and that the positions be reopened. Rather than adopt the PBA's findings and recommendations, the Dakota County Board of Commissioners remanded the case to the PBA for further analysis of findings one and two, and for a determination of whether the four-member Oral Board was "seriously detrimental" to the unsuccessful applicants. On remand, the PBA deleted findings one and two, but determined the composition of the Oral Board was seriously detrimental to the hiring process because the two members from the Sheriff's Department knew every applicant personally and could, if they desired, critically control the final score of each.

The Dakota County Board of Commissioners, on receiving this determination, accepted the PBA's recommendations, set aside the five promotions, and reopened the five positions for applications. Instead of appealing the County Board's determination, appellant reapplied for the Correctional Team Leader position. Appellant's score after the second round of testing did not place in the top five, however, and he was removed from the new position of Correctional Team Leader. Appellant resumed his old job as a correctional officer, but continues to receive the same wages he received as a Correctional Team Leader.

Appellant then petitioned the Commissioner of Veterans Affairs (commissioner), for reinstatement to the Correctional Team Leader position, claiming he had been removed without notice and a hearing in violation of the Veterans Preference Act. Minn.Stat. § 197.46 (1990). The administrative law judge (ALJ) who heard the matter, determined that the county's actions under its personnel administration system, renoticing and reselecting employees, were not exempt from the Veterans Preference Act. The ALJ recommended that the commissioner order reinstatement of appellant to the position of Correctional Team Leader together with reimbursement for any lost wages and benefits. The commissioner, adopting the findings, conclusions and recommendations of the ALJ, ordered the rein-

statement of appellant with the restoration of any wages and benefits lost.

The court of appeals reversed the commissioner's order, on Dakota County's appeal, holding that appellant had never acquired preference rights under the Veterans Preference Act because of the flaw in the original hiring process. *Ochocki v. Dakota County Sheriff's Dept.*, 454 N.W.2d 476, 480 (Minn.App.1990), *rev. granted* (Minn. June 26, 1990). The issue before this court is whether the Veterans Preference Act applies where a public employer county revokes a veteran's promotion made by a hiring process that violated the county's civil service rules and procedures. This is a question of law about which we may exercise our independent judgment. *Ress v. Abbott Northwestern Hosp. Inc.*, 448 N.W.2d 519, 523 (Minn.1989).

A veteran may be terminated or removed by a public employer on any of three grounds: for either (1) "incompetency" or (2) "misconduct" as provided by the Veterans Preference Act, Minn.Stat. § 197.46 or (3) where the employer abolishes a veteran's position in good faith. *State ex rel. Boyd v. Matson*, 155 Minn. 137, 141, 193 N.W. 30, 32 (1923). Since there are no allegations of either incompetency or misconduct by the county against appellant, and the position of Correctional Team Leader was not abolished, appellant claims that his removal without notice and hearing violated the Veterans Preference Act. There are fact situations, however, which fall outside the reach of section 197.46. In *Gorecki v. Ramsey County*, 437 N.W.2d 646, 650 (Minn.1989), for example, we held that the reclassification of a veteran's position, which resulted in a freezing of the veteran's wages, did not constitute a removal for purposes of the Veterans Preference Act because the veteran's relative rank within the employment system remained unchanged following the reclassification.

Similarly, the facts in this case fall outside the reach of section 197.46 because appellant was never validly promoted to the position of Correctional Team Leader in the first place. We have held that a person

cannot acquire the protected status of a civil servant by virtue of a mistake in the certification process. *State ex rel. Archambo v. Thorfinnson,* 240 Minn. 327, 332, 61 N.W.2d 231, 235 (1953) (appellant incorrectly certified as a patrolman did not acquire status of patrolman and could later be laid-off after he was correctly classified as a non-civil servant investigator). Our language in *State ex rel. Kruse v. Webster,* 231 Minn. 309, 43 N.W.2d 116 (1950) is also instructive:

> Once civil service is established, there must be at least substantial compliance with the laws and rules appertaining thereto if it is to be of any value. There would be little security afforded by civil service if that were not true. * * * Confusion results when municipal authorities seek to circumvent the established rules or to ignore them. If the examination and resulting certification did not comply with the laws and with the rules of the civil service commission, we cannot see that prejudice will result to anyone if a legal and proper examination be held now in order that applicants for the position involved may be duly and legally certified.

*Id.* at 315–16, 43 N.W.2d at 120. We hold that the public employer county's revocation of a veteran's promotion made by a hiring process that violated the county's personnel administrative rules and procedures, and was seriously detrimental to all candidates for that position,[1] is not the type of removal to which the Veterans Preference Act applies; therefore, the county's actions did not violate the Veterans Preference Act.

The question of whether the county acted in good faith to comply with its civil service rules, *see Young v. City of Duluth,* 386 N.W.2d 732, 737–38 (Minn.1986), is not an issue in this case. The ALJ found no evidence of any bad faith or impropriety on the part of Dakota County, nor does appellant make such an allegation on appeal. If appellant was aggrieved by the county's actions in revoking his appointment as Cor-

rectional Team Leader, he could have petitioned for certiorari review of the county's decision. Minn.Stat. §§ 14.64; 383D.32 (1990). Instead, he opted to reapply for the position and go through the examination process a second time. It was only after he failed to score as a top candidate during the second hiring process that appellant decided to challenge the county's actions.

The decision of the court of appeals is affirmed.

Affirmed.

GARDEBRING, J., took no part.

---

1. The finding of the PBA, adopted by the Dakota County Board of Commissioners, that the inclusion of the second person from the Dakota County Sheriff's Department on the oral board was "seriously detrimental" to all applicants has not been challenged.